A. K. MURCHISON and wife v. JOHN C. PLYLER.

*Homestead.*

The provisions of law in reference to homestead do not apply to a remainder dependent upon a life estate. Whatever may be the nature of interest in land, whether legal or equitable, in order to constitute a homestead, it must be such as carries with it a present right of occupancy.

CIVIL ACTION tried at Fall Term, 1881, of IREDELL Superior Court, before *Seymour, J.*

The plaintiffs intermarried in the year 1870, and have infant children now living. In 1872, John A. Murchison, the father of the male plaintiff, died leaving a will in which he devised the land in controversy to his widow, Barbara, for life, with remainder in fee to his said son.

In 1875, the plaintiff, A. K. Murchison, executed a mortgage whereby he conveyed the said land to one Blackmer, as security for a debt—his wife however not joining in the same.

In 1876, Blackmer sold under the mortgage to one Summers, who on the 1st day of January, 1877, sold and conveyed the same to the defendant.

On the 10th day of March, 1877, the life tenant, Barbara Murchison, died. The plaintiffs, nor either of them, owned any other land than that in controversy, at the date of the execution of the mortgage to Blackmer, nor have they since acquired any, and their prayer is to have that instrument declared inoperative because of its non-execution by the feme plaintiff, and to have a homestead allotted to them in the premises.

His Honor, being of the opinion that there could be no homestead in a remainder sold during the pendency of the life estate, non-suited the plaintiffs, and they appealed.

*Mr. J. M. Clement,* for plaintiffs.
*Mr. D. M. Furches,* for defendant.

RUFFIN, J.   A careful examination of the law in relation to homestead exemptions, as written in the constitution and the statute, and expounded by the courts, seems to lead necessarily to the conclusion, that land held in remainder dependent upon a life estate in another, is not susceptible of that immediate occupancy, which is contemplated by law, in order to constitute a homestead.

While it may not be necessary, and as declared by the courts, is not necessary in order to bring it within the purview of the law, that the land to be exempt should be actually occupied by the claimant of the exemption, it must still be so circumstanced with reference to his estate and interest therein, as to be presently subject to such occupancy.

According to the express provisions of both the statute and the constitution, it is the *actual homestead* and the dwelling and other buildings *used* therewith, or in lieu thereof, such portion of the owner's real estate as he may elect, and as is *occupied by him*, that is declared to be exempt from sale under execution.

Another provision is that the *land* shall be set apart by *metes and bounds*, and in case of the debtor's death, leaving a wife and no children, that the rents and profits thereof shall inure to the widow during her widowhood.

With every disposition liberally to construe the law, and to give the fullest effect to its beneficent intentions in behalf of the debtor, we cannot perceive how these provisions can be made to apply to a mere remainder in lands dependent upon a life estate.   It could never have been, nor can it presently become the dwelling of the party.   In no mode possible to conceive of, can a present interest therein, to the exact value of a thousand dollars, be defined by metes and

bounds; nor, in the event of the owner's death, can the rents and profits inure to his widow.

The policy of the law is to provide a shelter for the debtor and his family and to give them, not a prospective interest in the land valued at so much, but the land itself, described by metes and bounds for their immediate occupancy and support. The statute, no more than the constitution, has undertaken to exempt a homestead in mere expectancy. But it first requires a party to acquire a *homestead in fact* and then applies the exemption to it. In short, there can be no *homestead* without a *home* or the immediate possibility of a *home* upon the land itself.

The restriction put by the constitution upon the husband's power to convey his homestead with the assent of his wife, signified by her private examination, confers upon the wife no estate in the premises, so as to constitute her a joint tenant with the husband. The land, though subject to exemption, is the absolute property of the husband, and the only effect of this constitutional provision is to fetter his power of alienation. But to do even this, it must be a *homestead*, that is, be susceptible in point of interest or estate, of a present occupancy and use by the husband and his family; and if not so susceptible, then it is not, and cannot be impressed with the homestead characteristics, and the owner's power to convey is without any limit or qualification. And if he should exert this power, either absolutely or conditionally, by a sale of his estate and interest in the land while thus untouched by the right of exemption, it can never again be made subject to that right by anything that may thereafter occur.

We do not mean to assert it to be essential to the right of homestead, that the party claiming it should have a perfect legal title to the lands sought to be subjected to it. An equitable interest in lands answers to the term "real estate,"

used in the statute, as well as a strict legal title does, and falls as clearly within the spirit and purpose of the law.

Accordingly it has been held that a debtor is entitled to a homestead in an equity of redemption, subject to the mortgage debts; and so, we doubt not, is a vendee under a contract for the purchase of land, or the holder of any such equitable interest. But whatever the nature of the interest, be it purely legal or equitable, in order to constitute a homestead it must be such as carries with it a present right of occupancy and enjoyment, or else makes that right to depend upon something to be done by the owner himself, and consequently subject to his control.

When once established and impressed upon the land, the right to homestead cannot be waived. Nor can it in any manner be diverted, save as provided for in the constitution, and then too are the possible rights of the wife and children in the right of exemption observed and guarded by the law. But these are all incidents to a homestead *in fact,* and not to contemplated future homestead—for such a homestead the law has made no provision.

There is still another view of the question, which, if every other objection to the right of plaintiffs to the homestead claimed were overcome, would seem to be conclusive against it. If that right ever existed, it must have done so before and up to the time of the conveyance to Blackmer by the husband. Now, for the whole of that period the life tenant was living, and was herself entitled to homestead in the same land, and to have it laid off to her by metes and bounds. And it is difficult for us to understand how two separate homesteads, thus laid off and described, can exist in the same land at one and the same time. Suppose that instead of one, the testator had had five sons, and the remainder had been to them all; if the plaintiff's position be correct, then we shall have the same parcel of land simultaneously

embraced in six distinct homesteads, for if good for one, it must be so for all.

The estate which the husband had in the land that is the subject of controversy here, was conveyed before the homestead quality (such as the constitution contemplates) attached to it, and when he had an unqualified power of disposition over it, and consequently it never became subject to that right.

The judgment of the court below is therefore affirmed.

No error.                                              Affirmed.